RENDERED:  MAY 21, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0910-MR

JOSEPH WILLIAM LUSTER                                        APPELLANT

v.
APPEAL FROM WARREN CIRCUIT COURT
HONORABLE DAVID A. LANPHEAR, JUDGE
ACTION NO. 16-CI-00755

SHARON BIGAY LUSTER                                           APPELLEE

OPINION
AFFIRMING IN PART
AND DISMISSING IN PART

** ** ** ** **

BEFORE:  COMBS, LAMBERT, AND MCNEILL, JUDGES.

COMBS, JUDGE:  This case involves a post-decree dispute arising from a

dissolution of marriage.  Joseph William Luster (Bill) appeals from an order of the

Warren Circuit Court sanctioning him for failing to comply with the terms of a

property settlement agreement.  That agreement was incorporated into the court's

decree dissolving Bill's marriage to Sharon Bigay Luster (Sharon).  Bill argues that

the court erred by concluding that he violated the terms of the decree and,

consequently, by imposing sanctions. In the alternative, he challenges the sanction itself, contending that it bears no relation to the alleged breach of the terms of the parties' property settlement agreement. After our review, we affirm in part and dismiss in part.

Bill and Sharon were married in Simpson County, Kentucky, in September 2009. In July 2016, Sharon filed a petition for dissolution of the marriage. Three years later, the parties reached a settlement agreement with respect to the division of their real and personal property. Each party was represented by counsel throughout the proceedings -- including mediation of the property issues.

Pursuant to the provisions of Article IV of the parties' agreement, Sharon was to receive as her separate property: several bank and investment accounts; the Land Rover and Porsche SUVs; the couple's marital home in Bowling Green, its contents, and an adjacent vacant lot; one-half of the compensation paid to Bill under his consulting agreement with Puracap Laboratories, LLC; one-half of the proceeds of her employment agreement with Puracap Laboratories, LLC; one-half of the proceeds of the sale, assignment, or transfer of certain tax credits awarded by the Puerto Rican government; the proceeds of her retirement account; and all accounts held in her name alone. Bill was to receive as his separate property: the parties' home outside Nashville and its

contents; an office building in Bowling Green; a Porsche 911 and a Denali SUV; a catamaran fishing boat; every interest in Blue Caribe, Inc.; every interest in Blu Pharmaceuticals, LLC; every interest in JHL Pharmaceuticals, LLC; a BB & T bank account; one-half of the compensation paid to him under his consulting agreement with Puracap Laboratories, LLC; one-half of the proceeds of Sharon's employment agreement with Puracap Laboratories, LLC; one-half of the proceeds of the sale, assignment, or transfer of certain tax credits awarded by the Puerto Rican government; and all accounts held in his name alone.

Additionally, Bill agreed to pay Sharon $385,000 within 30 days. Finally, the debt associated with each real estate interest was assigned to the party receiving the property. The parties specifically agreed to "make reasonable efforts to remove the other Party's name from said debt within 180 days of the execution of the Mediation Agreement (July 22, 2019) and indemnify and hold the other harmless for the same." The parties executed the settlement agreement on July 25, 2019. The agreement was approved by the court and incorporated into its decree of dissolution entered on the following day.

A few weeks later, Sharon filed a motion requesting that Bill be ordered to provide to her information regarding his efforts to refinance the Nashville home loan. She filed a separate motion requesting that Bill be ordered to

-3-

provide information related to the equalization payment to her of $385,000 due on August 21, 2019.

On January 30, 2020, Sharon filed a motion requesting that Bill be ordered to comply with the court's decree by removing "her name from any financial obligation to the [Nashville] property" and that he be fined $100 per day until proof is provided that he has done so. Bill responded and indicated that he had specifically bargained for -- and that Sharon had specifically agreed -- that he "make reasonable efforts" to have Sharon released from her obligation with respect to the home loan. Moreover, the court's decree had incorporated that language. He contended that the parties' settlement agreement did not require that the loan be refinanced by a date certain. Sharon argued to the court "you gotta set a deadline."

During its hearing, the court reiterated the parties' agreement that Bill make "reasonable efforts" to remove Sharon's name from the home loan within 180 days of July 22, 2019. The court remarked that it was not "stretching it to say that [Sharon] has some reasonable [basis] to expect that this should be accomplished within six months." It conceded that the agreement, incorporated into the court's decree, "doesn't say that exactly." Nevertheless, through its order entered March 5, 2020, and without the benefit of an evidentiary hearing, the circuit court granted Sharon's motion. The court construed the terms of the settlement agreement incorporated into its decree and concluded that the parties

-4-

had a "reasonable expectation that [Sharon's] financial obligation to the [Nashville] property would be removed in the six-month timeframe, which expired January 18, 2020." The court ordered Bill to refinance the $1.2 million Nashville home loan by noon on February 28, 2020. Failing to do so, Bill was to be assessed a sanction of one penny to be doubled each day until he did so. The court expressly denied that it intended to modify the terms of the divorce decree and indicated that Bill could file a motion to amend the sanction order if it appeared necessary.

Three weeks later, on March 26, 2020, Bill filed a motion for relief pursuant to the provisions of CR[1] 60.02. Bill indicated that he had made extensive efforts to refinance the debt associated with the Nashville property to no avail. Nevertheless, pursuant to the court's order of March 5, 2020, Bill's "fine" was expected to exceed the amount of the outstanding home loan very shortly. Bill contended that the court's sanction was unfounded and that it bore no relation to any injury that Sharon could claim she had suffered. His attorney represented that Bill was actively working to leverage other assets in order to satisfy the Nashville home loan in full.

Following a hearing conducted remotely, the circuit court conceded that the terms of its order of March 5, 2020, might be viewed as an abuse of

---

[1] Kentucky Rules of Civil Procedure.

discretion. In a final order entered on March 30, 2020, the court "retracted" the sanctions previously levied. The court now ordered Bill to pay a "$500 per day fine. . . beginning February 28, 2020 to be levied each day at 12:00 Central Time until such time as [Sharon] is removed from the [Nashville] mortgage." Several days later, Bill authorized a wire transfer of $1.2 million to pay off the loan tied to his Nashville home.

On April 21, 2020, Bill filed a motion "to determine sanction." He explained that while he had transferred funds sufficient to pay off the Nashville home loan on April 2, 2020, the bank had not applied those funds until April 14, 2020. Because of a dispute concerning outstanding bank fees of $140, the mortgage had not been released as anticipated. Nevertheless, Bill contended that he "should be assessed fines only until April 2, 2020" -- $17,500. Sharon argued that based on the number of days between February 28 and April 14, 2020, the sanctions against Bill totaled $23,500.

In an order entered on June 26, 2020, the Warren Circuit Court fixed the sanction against Bill at $20,500. Bill was ordered to pay this amount within three days. Bill filed his notice of appeal to this Court on July 21, 2020; Sharon did not cross-appeal.

On appeal, Bill argues that the family court erred by imposing any sanction against him because there is no evidence to show that he violated the

terms of the agreement incorporated into the court's decree or that Sharon had suffered some harm or prejudice as a result of the delay in paying off the Nashville home loan. In the alternative, he contends that the court abused its discretion by setting the sanction at $20,500, as this sum is not reasonably related to the seriousness of the alleged violation.

In his notice of appeal, Bill designated the court's order of March 30, 2020 (establishing sanctions at $500 per day beginning February 28, 2020) and the court's subsequent order of June 26, 2020 (fixing the resulting sanction at $20,500) as those he wished to appeal. However, the appeal of the court's order of March 30, 2020 is clearly untimely.

CR 73.02 provides that the notice of appeal **shall** be filed within 30 days after the date of notation of service of the judgment or order under CR 77.04(2). Pursuant to the provisions of CR 77.04, the circuit court clerk noted service of the court's order on March 30, 2020. Because it was filed more than thirty days after service, the appeal of the March 30 order must be dismissed pursuant to the provisions of CR 73.02. As a consequence, we may not review the decision of the trial court to sanction Bill at $500 per day (beginning on February 28, 2020) "until such time as [Sharon] is removed from the [Nashville] mortgage."

However, we may consider the appeal of the court's decision fixing the sanction against him at $20,500. Having done so, we conclude that the court

did not err by assessing this sanction. There is no disputing the fact that Sharon remained obligated with respect to the Nashville home loan until at least April 14, 2020, when the payoff proceeds were applied to the loan by the bank. According to the bank, the parties' home loan secured by a mortgage on the Nashville property was not paid off until that date. The trial court rejected in part Bill's argument that he should not be held responsible for the bank's untimeliness in applying the payoff and that his authorization of a wire transfer on April 2, 2020, should have ended his daily sanction. In light of the clear mandate provided in the court's order of June 26, 2020 -- in terms drafted by Bill's counsel, we cannot agree that it was bound to do so.

We AFFIRM the court's order of June 26, 2020. We DISMISS as untimely the appeal of the court's order entered on March 30, 2020.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Christopher T. Davenport
Bowling Green, Kentucky

BRIEF FOR APPELLEE:

Casey A. Hixon
Bowling Green, Kentucky